UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LELAND BUTLER,<br>    Plaintiff,<br><br>    v.<br>SHIRE HUMAN GENETIC<br>THERAPIES, INC., ET AL.,<br>    Defendants. | )<br>)<br>)<br>)    C.A. No. 16-11692-MLW<br>)<br>) |

MEMORANDUM AND ORDER

WOLF, D.J.                                                    March 15, 2017

The court has received: the Magistrate Judge's January 23, 2017 Report and Recommendation that defendants Shire Human Genetic Therapies, Inc. and Shire Pharmaceuticals LLC's motion to dismiss be allowed; plaintiff Leland Butler's objections to the Report and Recommendation; and defendant's response to plaintiff's objection. The court has considered the issues properly raised by plaintiff's objections de novo. See Fed. R. Civ. P. 72(b)(3). It has exercised its discretion and not reviewed de novo the issues not presented to the Magistrate Judge. See Borden v. Sec'y of Health and Human Servs., 836 F.2d 4, 6 (1st Cir. 1997). In any event, those new arguments appear to be unmeritorious.

The court finds the Report and Recommendation to be thorough and persuasive. Therefore, the motion to dismiss is being allowed. At the conclusion of his objections, plaintiff requests that any

dismissal be without prejudice to the filing of an amended complaint, but provides no justification for this request. Plaintiff previously amended his complaint. Therefore, he has had two opportunities to attempt to state a valid claim. There is no good reason to allow a third. In any event, it appears that any effort to amend the complaint again would be futile.

Therefore, it is hereby ORDERED that:

1. The attached Report and Recommendation (Docket No. 21) is INCORPORATED in this Memorandum and ADOPTED.

2. Defendant's Motion to Dismiss the Amended Complaint in its Entirety (Docket No. 8) is ALLOWED.

3. This case is DISMISSED.

                                                            */s/ Mark L. Wolf*
                                          UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LELAND BUTLER,<br><br>Plaintiff,<br><br>v.<br><br>SHIRE HUMAN GENETIC<br>THERAPIES, INC. & SHIRE<br>PHARMACEUTICALS LLC,<br><br>Defendants. | Civil Action No. 16-11692-MLW |

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

[Dkt. No. 8]

January 23, 2017

Boal, M.J.

Plaintiff Leland Butler brings this action against defendants Shire Human Genetic Therapies, Inc. and Shire Pharmaceuticals LLC (collectively, "Shire") alleging breach of the covenant of good faith and fair dealing, wrongful termination, and negligent and intentional infliction of emotional distress. The defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Dkt. No. 8. For the following reasons, the Court recommends that the District Judge assigned to this case grant the motion to dismiss.[2]

---

[1] The defendants state that Shire Pharmaceuticals was not served with the complaint and was not Butler's employer. Dkt. No. 9 at 1. Shire Pharmaceuticals, however, joins in the motion to dismiss. Id. at 1-2.

[2] On September 30, 2016, the District Court referred this case to the undersigned for full pretrial proceedings, including report and recommendation on dispositive motions. Dkt. No. 13.

1

I.   **FACTUAL & PROCEDURAL BACKGROUND**[3]

Leland Butler was employed as a Regional Business Manager, Shire Rare Disease Business Unit, from January 30, 2014 through January 23, 2015. Compl. ¶¶ 4-5.[4] Shire often held "speaker meetings," in which a doctor would meet with patients or potential patients to discuss illnesses and Shire products. Id. ¶ 12. According to Butler, the meetings, held at least annually, largely contained the same information and often the audience consisted of the same patients. Id. ¶ 14. There are standard slides that are provided to physicians with respect to these meetings. Id. ¶ 18.

On October 18, 2014, an annual meeting was held in Phoenix, Arizona. Id. ¶ 17. During the meeting, Dr. Kirk Aleck spoke with patients and families affected by Hunter Disease. Id. ¶ 19. Only two families attended the meeting and both families said they did not want to see the slides, which they had seen multiple times before. Id. Dr. Aleck did not want to present the same slides again and did not show them during the meeting. Id. ¶¶ 19-20. After the meeting, Butler submitted a report indicating that the slides were not shown. Id. ¶ 21.

In January 2015, Butler received an email from a Shire Global Compliance attorney. Id. ¶ 22. The attorney requested a conference call to discuss the October 18, 2014 meeting. Id. Butler participated in the call on January 12, 2015. Id. Soon after, Butler received an email from his supervisor, Jason Amar, requesting a follow-up discussion. Id. ¶ 24. During the January 23, 2015 follow-up call, in which Butler, Dan Gauthier, and Jason Amar participated, Butler was informed that he would be "terminated with cause" due to an alleged compliance violation. Id. ¶

---

[3] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Amended Complaint and drawing all reasonable inferences in Butler's favor. See Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).

[4] The Court refers to the plaintiff's Amended Complaint, see Dkt. No. 1-1, as "Compl."

24. Specifically, Butler failed to comply with the "mandatory" requirement that the slides be shown at the October 18, 2014 meeting. Id. ¶ 25. Butler challenged his termination and argued that, at the time of the meeting, he had no reason to believe that the slides were a mandatory part of the presentation. Id. ¶ 26. Butler states that he spoke with trainer Kevin Bille one month before the meeting, and "there was no mention about slides being mandatory or what to do if the audience and/or speaker did not want to see the slides." Id. ¶ 27. Butler further claims that none of the correspondence, training materials, or instruction regarding the meetings indicated that an individual would be subject to termination (or any form of discipline) for failure to show the slides during a meeting. Id. ¶¶ 29-31. Rather than state that the slides were mandatory, a pre-printed meeting form only contained a box to check if the slides had been shown. Id. ¶ 28. Butler also alleges that on or about November 2014, Shire revised its training materials to state that slides must be shown at meetings. Id. ¶ 32.

Butler was 58 years old when he was terminated from Shire and has been unable to find work since his termination. Id. ¶¶ 9, 33. Butler claims that as a result of the defendants' actions, he has suffered a loss of income, damage to his reputation, embarrassment, humiliation, emotional distress, and various expenses related to the treatment of his emotional distress. Id. ¶ 34. To compensate for these losses, Butler seeks, inter alia, lost wages and benefits from the date of his termination, an award of front pay from the date of judgment through January 2024, treble and/or liquidated damages, attorneys' fees, and prejudgment interest. Compl. at 8.[5]

Butler filed the instant suit in Massachusetts Superior Court on July 12, 2016. Dkt. No. 7 at 10. He amended his complaint on August 3, 2016. Dkt. No. 1-1. Shire removed the action on

---

[5] When citing the parties' pleadings and exhibits, the Court refers to page numbers assigned by ECF, rather than the original page numbers.

the basis of diversity jurisdiction on August 19, 2016.[6] Dkt. No. 1. On August 26, 2016, the defendants moved to dismiss the Amended Complaint on the following grounds: (1) Butler has failed to state a claim with respect to breach of the covenant of good faith and fair dealing and wrongful termination; and (2) Butler's emotional distress tort claims are barred by the exclusivity provision of the Massachusetts Workers' Compensation Act. Dkt. No. 9 at 2. Butler opposed Shire's motion to dismiss on September 8, 2016. Dkt. No. 10. Shire filed a reply brief on October 3, 2016, and Butler filed a sur-reply on October 13, 2016. Dkt. Nos. 14, 17. The Court heard argument on January 18, 2017.

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[6] To establish complete diversity among the parties, the defendants' notice of removal states the following: (1) Butler is domiciled in Utah; (2) Shire Human Genetic Therapies, Inc. is a Delaware corporation with a principal place of business in Massachusetts; and (3) Shire Pharmaceuticals LLC is a Delaware limited liability company with a principal place of business in Pennsylvania. Dkt. No. 1 at 2. However, for purposes of diversity jurisdiction, "the citizenship of a limited liability company 'is determined by the citizenship of all of its members.'" D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 125 (1st Cir. 2011) (quoting Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54 (1st Cir. 2006)). In order to ensure that subject-matter jurisdiction exists, the Court requested that the defendants indicate the citizenship of each of the members of Shire Pharmaceuticals LLC. On January 20, 2017, the defendants submitted a statement of corporate citizenship in which they asserted that the members and managers of Shire Pharmaceuticals LLC are all citizens of either Massachusetts or Pennsylvania. Dkt. No. 20. Accordingly, having considered the notice of removal and the defendants' statement of corporate citizenship, the Court finds that there is complete diversity of the parties in this case and subject-matter jurisdiction exists.

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Decotiis v. Whittemore, 635 F.3d 22, 28–29 (1st Cir. 2011) (citation omitted). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. See also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of liability. Iqbal, 556 U.S. at 679.

### B. Scope Of The Record

As a preliminary matter, the Court must determine what documents it may consider in connection with the instant motion to dismiss. In support of his opposition, Butler proffers two documents for the Court's consideration: (1) his own affidavit, dated September 7, 2016; and (2) a power point presentation. See Dkt. Nos. 10-1, 10-2.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "under certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary

judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). "These exception include documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint." Id. (internal quotations, modifications, and citations omitted).

Butler's claims stem from his allegation that he was terminated as a result of a failure to show power point slides at the October 2014 meeting. Accordingly, the Court finds that it is appropriate to consider the slides as they are sufficiently referred to in the Amended Complaint.[7] See Miller v. Chandra, C.A. No. 14-12337-NMG, 2015 WL 1431075, at *4 (D. Mass. March 27, 2015).

The affidavit, however, does not meet any of the exceptions listed above. Accordingly, the Court will not consider Butler's affidavit in evaluating the defendants' motion. For the same reasons, the Court will not consider factual assertions made by Shire in its briefing, see Dkt. No. 9 at 2-3, or by Butler at oral argument, which are not alleged in the Amended Complaint.

### III. DISCUSSION

#### A. Breach Of The Covenant Of Good Faith And Fair Dealing

Butler claims that Shire breached the covenant of good faith and fair dealing when it terminated his employment. Specifically, Butler argues that his termination amounts to a "bad faith fabrication" by Shire because he adhered to Shire's policies with respect to the October 2014 meeting. Dkt. No. 10 at 2. The Court finds that Butler's allegations are insufficient to state a claim for breach of the covenant of good faith and fair dealing.

---

[7] In addition, at oral argument, defense counsel stated that she did not object to the Court's consideration of the power point presentation.

6

Under Massachusetts law,[8] "[e]very contract implies good faith and fair dealing between the parties to it." T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569-70 (Mass. 2010) (quoting Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 471 (1991)). "The covenant of good faith and fair dealing requires that 'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.'" Id. at 570 (quoting Anthony's Pier Four, 411 Mass. at 471-72). In the employment context, courts have placed strict limitations on good faith and fair dealing claims, which may arise only "in circumstances when an at-will employee has been terminated in bad faith."[9] Grant v. Target Corp., 126 F. Supp. 3d 183, 189-90 (D. Mass. 2015) (quoting Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385 (2005)).

Accordingly, for Butler "to recover for a breach of the implied covenant of good faith and fair dealing, there must be conduct taken in bad faith either to deprive [him] of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage." Rodio v. R.J. Reynolds Tobacco Co., 416 F. Supp. 2d 224, 233 (D. Mass. 2006) (internal citations omitted). In other words, "[d]espite the general rule that at-will employment agreements may be terminated by either party for any reason or no reason whatsoever, the employer remains 'accountable to a discharged employee for unpaid compensation if the employee [was] terminated in bad faith and the compensation is clearly connected to work already performed.'" Id. (quoting Harrison v. NetCentric Corp., 433 Mass. 465, 473 (2001)).

---

[8] Because this Court sits in diversity jurisdiction, state law supplies the substantive rules of decision. Genereux v. Raytheon Co., 754 F.3d 51, 54 (1st Cir. 2014) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Here, the parties agree that Massachusetts law controls.

[9] The parties do not dispute that Butler was an at-will employee at the time of his termination. See Dkt. No. 9 at 5; Dkt. No. 10 at 1.

There is, however, no general duty on the part of the employer to "act nicely." Grant, 126 F. Supp. 3d at 190.

Where there has been a breach of a duty of good faith and fair dealing, the employee is only entitled to certain types of economic damages flowing from the breach. See id. Specifically, in awarding damages for such claims, "the goal is to compensate an employee for past services and to deny the employer any readily definably, financial windfall resulting from the breach." Ayash, 443 Mass. at 388 (internal citations omitted). For this reason, even where there is a breach, a defendant is not liable for negative effects on the plaintiff's future career or for the plaintiff's emotional distress. See id. Rather, damages are limited to compensation that the employee had fairly earned and legitimately expected, such as compensation for work already performed. Grant, 126 F. Supp. 3d at 190; see also King v. Driscoll, 424 Mass. 1, 7 (1996)). Accordingly, a claim for breach of the covenant is not cognizable where the plaintiff alleges that he is entitled to wages he would have made in the future had his employment not been terminated, but fails to allege that he was not compensated for past services. Harrison v. Kraft Foods, Inc., C.A. No. 07-10233-RWZ, 2007 WL 3232552, at *7 (D. Mass. Oct. 30, 2007); see also Byrnes v. Lukes, C.A. No. 2009-1403, 2009 WL 4894460, at *7 (Mass. Super. Nov. 3, 2009) (dismissing plaintiff's claim for breach of the covenant because she failed to allege that her employer had deprived her of compensation for services already performed).

Applying this framework, the Court finds that Butler has failed to state a claim for breach of the covenant of good faith and fair dealing. Butler alleges that Shire failed "to reasonably investigate the circumstances surrounding the training and guidance provided to [him] with respect to showing slides at the [October 2014] meeting and, instead, us[ed him] as a 'sacrificial lamb' in an attempt to demonstrate how strict Shire was re[garding] compliance." Compl. ¶ 37.

8

As a general matter, however, this type of unfair treatment does not rise to the standard of bad faith required to establish a claim for breach of the covenant of good faith and fair dealing. See Ayash, 443 Mass. at 386. In addition, Butler does not allege any other conduct by the defendants—such as, for example, a failure by Shire to abide by its own policies or procedures—that might trigger liability for this claim. See id.; see also Harrison, 2007 WL 3232552, at *7.

Finally, even assuming, arguendo, that a breach of the covenant has occurred, Butler has not alleged any facts demonstrating that he sustained the type of economic damages that are recoverable under this cause of action. He seeks compensation for emotional distress, including embarrassment, humiliation, and harm to his reputation, as well as damages in the form of wages lost from the date of his termination through the future. Compl. at 8. However, as described above, none of these damages are recoverable under a good faith and fair dealing claim. Because Butler has not alleged any damages in the form of compensation or benefits he fairly earned and/or legitimately expected prior to termination, he has not stated a cognizable claim for breach of the covenant.

Accordingly, the Court recommends that the District Judge dismiss Butler's claim for breach of the covenant of good faith and fair dealing.

B.   **Wrongful Termination**

Butler alleges that he was wrongfully terminated by Shire on January 23, 2015. Under Massachusetts law, an at-will employee may be fired for any reason or no reason at all. Rodio, 416 F. Supp. 2d at 232. However, "courts have recognized limited exceptions to this general rule, including where the discharge is for reasons that violate clearly-established public policy." Id. at 233 (internal citations omitted). Here, Butler's claim for wrongful termination is premised on the public policy exception. Dkt. No. 10 at 3-4.

Massachusetts recognizes that an at-will employee may pursue a cause of action for wrongful termination where the termination violates a clearly established public policy. King v. Driscoll, 418 Mass. 576, 582 (1994); see also Rodio, 416 F. Supp. 2d at 236 (public policy must be "well-defined" or "clearly established" to effectively state a claim for wrongful termination). While there is no bright line between protected and non-protected actions, redress is available for employees who are terminated for asserting a legally guaranteed right, for doing what the law requires, or for refusing to do that which the law forbids. Rodio, 416 F. Supp. 2d at 236 (citing Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472-73 (1992)). Beyond these defined categories, the Supreme Judicial Court has "consistently interpreted the public policy exception narrowly, reasoning that to do otherwise would convert the general rule into a rule that requires just cause to terminate an at-will employee." King, 418 Mass. at 582 (internal citations omitted).

Therefore, the public policy exception does not necessarily protect all employee acts that are appropriate or socially desirable. See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 150 (1989). In addition, "the internal administration, policy functioning, and other matters of an organization," such as matters that do not rise to a level of public importance, cannot be the basis for a public policy exception. See King, 418 Mass. at 583. Instead, internal policy decisions are a matter of judgment for those entrusted with decision making within an institution, and an employee who disagrees with his employer's decisions—even an employee in a socially important occupation—may not seek redress in the courts. See Smith-Pfeffer, 404 Mass. at 151. Whether a public policy is implicated in a particular case is an issue of law for the court. Id.

Even construing the record facts in the light most favorable to Butler, Shire's investigation into whether the slides were shown at the October 2014 meeting is an internal company matter that does not give rise to the public policy exception. Butler argues that terminating an employee who has complied with company policies and directives constitutes a matter of public policy, but he has failed to provide adequate legal and factual support for this theory. Furthermore, his claim that he did not know the slides were a mandatory part of the October 2014 presentation (see Compl. ¶¶ 26-27) does nothing to transform this case into a matter of public policy. Rather, this Court finds that there are no facts alleged in the Amended Complaint which support the theory that a well-defined, important public policy has been violated in this case. Accordingly, the Court finds that Butler has failed to state a claim for wrongful termination on the basis of the public policy exception, and recommends that Butler's wrongful determination claim be dismissed.

### C. Emotional Distress Claims

Butler alleges claims of negligent and intentional infliction of emotional distress. Compl. ¶¶ 40-45. The defendants argue that such claims are barred by the exclusivity provision of the Massachusetts Workers' Compensation Act. Dkt. No. 9 at 6-8. Butler has not opposed Shire's motion to dismiss these claims. Dkt. No. 10 at 5. In any event, these claims are subject to dismissal.

The Massachusetts Workers' Compensation Act (the "Act") "was designed to replace tort actions by providing a uniform, statutory remedy for injured workers, in contrast to a piecemeal, tort-based system." Saab v. Mass. CVS Pharm., LLC, 452 Mass. 564, 567 (2008) (internal citations omitted). Under the exclusivity provision of the Act, "[a]n employee shall be held to have waived his right of action at common law . . . if he shall not have given his employer, at the

11

time of his contract of hire, written notice that he claimed such right." M.G.L. c. 152, § 24 (2007). Here, Butler does not allege that he provided Shire with written notice retaining his right of action with respect to common law tort claims. For this reason, his claims for intentional and negligent infliction of emotional distress—which are otherwise compensable under the Act—are barred by the Act's exclusivity provisions. See Hinchey v. NYNEX Corp., 144 F.3d 134, 146 n.7 (1st Cir. 1998); see also Mullen v. Ludlow Hosp. Soc., 32 Mass. App. Ct. 968, 970 (1992).

Accordingly, this Court recommends that Butler's emotional distress claims also be dismissed.

## IV. RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case grant the defendants' motion to dismiss.

## V. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999);

Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge